465 So.2d 888 (1985)
Arthur TAIT et al., Plaintiffs-Appellees,
v.
PILOT LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 16,796-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 24, 1985.
*889 Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for defendant-appellant.
Roos & Roos by Armand L. Roos, Shreveport, for plaintiffs-appellees.
Before JASPER E. JONES and FRED W. JONES, Jr., JJ., and PRICE, J. Pro Tem.
FRED W. JONES, Jr., Judge.
Arthur Tait and Jane Tait brought this suit against Pilot Life Insurance Company alleging that expenses incurred in the treatment of Mrs. Tait's migraine headaches and pain and noise in her left temporomandibular joint (TMJ syndrome) should be covered under the terms of their group health insurance policy. Pilot denied coverage and asserted that the treatment constituted dentistry excluded by the policy language. The trial judge ruled that temporary, and later permanent, crowns on the teeth for the purpose of correcting TMJ syndrome was treatment for a covered medical problem. Pilot appealed. We affirm for the following reasons.
The trial judge relied on the case of Robinette v. Metropolitan Life Insurance Co., 404 So.2d 1344 (La.App. 2d Cir.1981). In Robinette the issue was whether surgical repositioning of plaintiff's maxilla, when done by an Oral and Maxillo-Facial Surgeon (a specialization in dentistry), constituted "dental services" excluded from coverage under the policy. The court reviewed the jurisprudence and found that coverage was allowed for: (1) surgical fracturing and resetting of both the maxilla and mandible performed by a dentist; (2) treatment of a severe malocclusion and protruding mandibula by removal of three impacted teeth by a dentist; (3) treatment of hearing loss, earaches, and cracking and popping in the jaw joint (TMJ syndrome) with an oral prosthetic device and medication prescribed by a dentist; and (4) a mandibular alveoloplasty (i.e., surgical preparation of ridges preliminary to denture construction) done by a dentist. See Robinette, p. 1346.
This court found the deciding factor in Robinette to be that the purpose of the treatment was to relieve pain from plaintiff's mandibular joint, rather than to correct a dental problem.
In this case the policy provided:
5. "Covered Medical Expenses" means the following charges when made for services or supplies which are for the medical care and treatment of injury or sickness and are ordered by a doctor:
* * * * * *
b.... (1) charges of doctors for medical or surgical care and treatment, ...
* * * * * *
LIMITATIONS
* * * * * *
Charges for dentistry will be considered Covered Medical Expenses only if (a) they are made for treatment of injuries sustained in an accident ...
Our inquiry, therefore, is whether the injury in this case is a covered medical *890 expense as medical care and treatment of an injury or whether it is excluded as dentistry not involved in treatment of an injury caused by an accident.
Treatment for TMJ snydrome has traditionally been medical. Dr. McHorris, whose deposition was received in evidence by stipulation, is a pioneer in the area of occlusal treatment of TMJ syndrome. He described the traditional treatments by orthopedists, neurosurgeons and general practitioners. He also described many of the unsatisfactory side effects of the traditional treatments. Recently, prosthetic devices called "splints" have been used to correct jaw alignment problems causing TMJ snydrome. These splints are designed and fitted by dentists. In this case, as in other cases, the insurance company paid for the splint without objection.
Dr. McHorris has found that cumbersome splints can be replaced by building up the teeth with caps to the extent that they prevent overclosure of the mouth. This method has produced a permanent solution to TMJ syndrome and is gradually growing in acceptance as the preferred method of treatment. To say that realignment of the jaw by building up the teeth instead of surgical repositioning of the jaw is dentistry encourages policy holders to undergo a more expensive, more dangerous, and less satisfactory treatment for a medical problem. Looking at the problem being treated, rather than the method used or the title of the professional administering the services, treatment of TMJ syndrome by capping the teeth is not dentistry. Consequently, we affirm the trial court.
PRICE, J. Pro Tem., dissents and assigns written reasons.
PRICE, Judge Pro Tem., dissenting.
I dissent. The policy clearly excludes payment for work done by a dentist. Dr. McHorris testified that his specialty, Gnathology, was within the dental field and that the work performed on Mrs. Tait was dentistry. The policy provision is clear and unambiguous and is not contrary to the provisions of the insurance code or public policy of this state.