545 So.2d 1241 (1989)
Michael Todd HARVEY, Plaintiff-Appellant,
v.
OUACHITA PARISH SCHOOL BOARD, et al., Defendant-Appellee.
No. 20,574-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
Bruscato, Loomis & Street, Anthony J. Bruscato, Monroe, for plaintiff-appellant.
Talley, Anthony, Hughes & Knight by R. Bradley Lewis, Bogalusa, for defendant-appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The plaintiff, Michael Todd Harvey, appeals the trial court's granting of the motion *1242 for summary judgment filed by one of the defendants, the Louisiana High School Athletic Association (LHSAA). We affirm.
On September 12, 1986, the plaintiff, a running back for the West Monroe High School football team, received serious injuries during a football game played in Shreveport against Booker T. Washington High School. The plaintiff alleges that during the third quarter a Booker T. Washington player grabbed his face mask, violently twisted his head, and forced him out of bounds. After the play was blown dead, several Booker T. Washington players intentionally piled on top of the plaintiff. As a result of these actions, the plaintiff alleges that he received a serious neck injury. The plaintiff further alleges that the players of Booker T. Washington had engaged in similar violent conduct toward the plaintiff and his teammates during the entire game. The plaintiff also alleges that the Booker T. Washington team had a history of engaging in excessive physical contact and extreme unsportsmanlike conduct and that other schools knew about Booker T. Washington's conduct.
The plaintiff filed suit for $1,190,000 against the Ouachita Parish School Board, the Caddo Parish School Board, Ross Davis (the coach of the West Monroe High School football team), James Mosely (the coach of the Booker T. Washington football team), and the LHSAA.
The allegations against the LHSAA are the only ones at issue on this appeal. The plaintiff alleged that the referees at the game were the agents and employees of the LHSAA. The plaintiff alleged that the negligence of the LHSAA, through the referees, consisted of failing to conduct the game with a reasonable degree of safety, allowing dangerous and intentionally harmful play to go on, allowing the plaintiff to be injured by an opposing team after the play was dead, and failing to expel excessively rough players from the game.
The LHSAA filed a motion for summary judgment. With its motion the LHSAA filed the affidavit of Tommy Henry, the Commissioner of the LHSAA. In his affidavit, Mr. Henry stated the following: the LHSAA is a voluntary, non-profit association of over 430 public, parochial and other private Louisiana high schools; it is primarily concerned with such matters as eligibility for athletics, prevention of recruitment, and state championship competition between schools; it is not the employer of the principals, coaches and teachers of the high schools that are members of the LHSAA; it does not conduct or supervise the individual games between its members; it has not adopted rules concerning safety for either spectators or players since that is the responsibility of local law enforcement authorities and the schools conducting the athletic events; and the individual game officials who referee the athletic events between members of the LHSAA are not hired or paid by the LHSAA but by the schools involved in the games.
In its answers to the plaintiff's interrogatories, the LHSAA stated that it does not set the training requirements for football game officials but does give a rules test to officials who referee football games between its member schools. The LHSAA also stated that it "registers" football officials who work the games between its member schools in one of three classifications: registered official, approved official, and certified official. The LHSAA admitted that the officials at the game in question were registered with it and attended its rules clinics but were not instructed or trained by the LHSAA. The LHSAA stated that the organization primarily responsible for training and instructing officials is the local officials' association. For the Shreveport area, that organization is the Northwest Louisiana Football Officials' Association.
In opposition to the motion for summary judgment, the plaintiff filed the affidavit of Vernice J. Pleasant, Jr. Mr. Pleasant stated that for the past 18 years he has been the stadium public address announcer for the West Monroe High School football team and that he has attended away games as a spectator. Specifically, he attended West Monroe's 1983, 1984, and 1985 games against Booker T. Washington. During these games he observed the players of the *1243 Booker T. Washington team engage in late hitting, gang tackling, excessive physical force, and other unsportsmanlike conduct.
The plaintiff also submitted a copy of the Louisiana High School Athletic Association Official Handbook (1987-1988) which contains, among other things, the constitution and bylaws of the LHSAA.
In granting LHSAA's motion for summary judgment, the trial court stated that it seemed clear that there was no law imposing any liability on a voluntary, non-profit organization such as the LHSAA for a tort committed by one of its members or by employees of its members against a participant in an activity sponsored by the organization. The court found that "there simply is no legal duty that the defendants owe the plaintiff which duty was breached by the actions of the defendants." The plaintiff appealed.
On appeal, the plaintiff argues that the trial court committed manifest error in granting the motion for summary judgment filed by the LHSAA. The LHSAA answered the appeal, asserting that the plaintiff's appeal is frivolous and asking for damages.
LSA-C.C.P. Art. 966 provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
Even if there is no genuine issue of material fact, a summary judgment is still improper if the mover is not entitled to judgment as a matter of law. Credithrift of America, Inc. v. Williams, 426 So.2d 339 (La.App. 2d Cir.1983). Reasonable minds must inevitably conclude that the mover is entitled to the dismissal of the plaintiff's action as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Credithrift of America, Inc. v. Williams, supra; Robinett v. Metropolitan Life Insurance Co., 404 So.2d 1344 (La.App. 2d Cir.1981); Johnson v. Edmonston, 383 So.2d 1277 (La.App. 1st Cir.1980).
The plaintiff argues two grounds for liability on the part of the LHSAA. The plaintiff's main argument is that the LHSAA is responsible for the actions of the referees at the game and that the referees' failure to remove those players who were displaying excessively rough behavior led to the plaintiff's injury. The plaintiff contends that because the referees must be registered by the LHSAA and pass a rules test given by the LHSAA in order to officiate varsity football games, the LHSAA controls the referees. According to the plaintiff, the LHSAA is responsible for failing to instruct the referees to remove players who engage in excessively rough behavior.
The LHSAA constitution and bylaws, which the plaintiff submitted in opposition to the motion for summary judgment, do reveal that the referees must pass a rules test and complete registration requirements in order to officiate varsity football games. Before officials can be registered with the LHSAA, they must agree to follow the rules and regulations of the LHSAA. The constitution and bylaws also state that the schools, not the LHSAA, hire the officials for each game. The bylaws clearly state that there is no appeal to the LHSAA from the decision of any official where the application of the rules of a particular sport are concerned.
In order to have competition, it is obvious that there must be some structure or framework within which to conduct that competition. The LSHAA provides that structure. The organization establishes standards, minimally certifies officials for the individual schools to use, and conducts playoffs leading to championships. It is clear, at least in regular season games, that the schools themselves conduct the games and hire the officials. Thus, the officials are not the agents or servants of the LHSAA.
The other basis of liability argued by the plaintiff is the authority of the LHSAA under its constitution and bylaws to consider complaints of poor sportsmanship against its member schools and to impose penalties. Although the plaintiff did not *1244 make a specific allegation that the LHSAA was at fault in failing to investigate Booker T. Washington for its alleged history of extreme unsportsmanlike conduct or that the LHSAA allowed "a reign of terror" to exist at the Booker T. Washington games, there are enough allegations in the petition to justify consideration of this issue.
Whether the defendant is liable for the plaintiff's injury on this basis is determined by the application of the duty-risk analysis. Under this analysis, four questions must be considered: (1) Was the defendant's conduct a cause in fact of the plaintiff's injury? (2) Did the defendant owe a duty to the plaintiff? (3) Was the risk and harm caused within the scope of protection afforded by the duty? (4) Was the duty breached? Mart v. Hill, 505 So.2d 1120 (La.1987).
In Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620, 623 (1972), the Louisiana Supreme Court quoted from a law review article by Wex Malone explaining the rationale behind this analysis:
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956).
See also Gresham v. Davenport, 537 So.2d 1144 (La.1989); Smith v. Travelers Insurance Co., 430 So.2d 55 (La.1983); Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981).
A duty has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton on the Law of Torts 356 (5th ed. 1984). The imposition of a duty depends on a case-by-case analysis. Gresham v. Davenport, supra.
An examination of the constitution and bylaws of the LHSAA reveals that the schools who belong to the LHSAA must conform to the rules and regulations of the LHSAA and pay a membership fee. The schools may not waive the rules of the LHSAA for any contest. The LHSAA may impose sanctions on a school for the school's failure to comply with the rules.
In accordance with its interest in promoting sportsmanship in high school athletics, the LHSAA has established a sportsmanship committee. Cases of poor sportsmanship are to be reported to the commissioner of the LHSAA who will investigate the complaint and call a meeting of the sportsmanship committee to hear the schools and parties involved. The committee can take whatever action it deems appropriate up to the suspension of the offending school from membership in the LHSAA for a year. The commissioner does not have to wait for a formal presentation of a rule infraction before he takes action. If an infraction is brought to his attention, he shall have full authority to investigate the case and impose a penalty.
In the present case, the plaintiff contends that the LHSAA was at fault for not exercising better control over Booker T. Washington or otherwise intervening in its athletic programs as it should have done to prevent this injury. However, there is nothing in the record to indicate that the LHSAA was aware or had been made aware of this type of behavior before this game. To hold that a voluntary association such as LHSAA had a duty to act where there is no assertion that it was aware or should have been aware of the offending course of conduct would be a significant leap. This "jump" is simply too far, notwithstanding the belief of one observer that the school at issue is known for rough play.
Although the LHSAA has some rather detailed rules regulating high school athletics, we do not believe that any duty which the LHSAA may owe to protect student *1245 athletes from injury during athletic contests extends to encompass the risk that this plaintiff encountered under the circumstances of this case. The purpose of the LHSAA is to provide a framework under which high school athletic contests can be conducted and to promote sportsmanship in high school athletics. In furtherance of this purpose, the LHSAA requires football officials to pass a rules test. The schools, however, hire the officials and conduct the games. If a member school violates one of the rules of the LHSAA and the LHSAA is then made aware of the infraction, the LHSAA can impose sanctions on the offending school. Just as the trial court, we do not find a duty that extends to the risk that occurred in this case.
In its brief, the LHSAA contends that this appeal is frivolous and it is thus entitled to damages. The LHSAA argues that it is ridiculous to suggest that voluntary associations like the LHSAA are liable for the torts of its members and that therefore the plaintiff's attorney is not sincere about the position he is advocating.
LSA-C.C.P. Art. 2164 provides that the appellate court can award damages for a frivolous appeal. This article is penal in nature and must be strictly construed. Appeals are favored, and penalties for frivolous appeal will not be imposed unless they are clearly due. Fisk v. Mathews, 525 So.2d 223 (La.App. 1st Cir.1988). Damages for frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates. Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634 (1965); Mathews v. Mathews, 415 So.2d 234 (La.App. 2d Cir.1982). Where contentions on appeal are without merit, but raise legitimate issues, damages for frivolous appeal are not allowed. Sample v. Sample, 432 So.2d 376 (La.App. 1st Cir. 1983).
In the present case the plaintiff has presented serious and thought-provoking arguments for liability on behalf of the LHSAA. We see no indication that the appeal is solely for the purpose of delay, or that the plaintiff was not serious in the position advocated. We deny the defendant's request.
The judgment appealed is affirmed, and the costs of this appeal are assessed to appellant.
AFFIRMED.