O.E. PRICE, Judge Pro Tem.
Defendant Free State Tool Corporation (FST) appeals a judgment finding it had breached its duty to plaintiff Jaggers, and assessing it sixty percent fault in causing injuries plaintiff sustained when she fell off FST’s roof which she and her husband were repairing.
Finding the trial court erred as a matter of law in determining that FST owed a duty to protect the plaintiff from the particular risk of harm here involved, we reverse.
FACTS
In early November 1985, plaintiff’s husband Grady Jaggers was awarded a contract to replace the roof on FST’s Haynes-ville building. The contract required FST to supply all materials and Mr. Jaggers to furnish all labor required to remove the old tin roof and underlying lath boards and install new decking and a shingle roof.
In keeping with their usual practice, plaintiff assisted her husband on the FST contract. Describing their roofing procedures, Mr. Jaggers stated that he would pull the old tin roofing sheets and lath boards from the rafters, leaving the nails *809 sticking out of the 12-15 pound lath boards, turn it around and give it to his wife. She would then carry the board to the roofs edge, look for anyone on the ground below and throw it to the ground for later disposal.
The accident made the basis of plaintiffs suit occurred after lunch on November 7. Describing how the accident occurred, Ms. Jaggers stated her husband had torn off an old 1" X 8" X 16' wooden lath board. After he handed it to her, she carried it to the sloped roofs edge at the rear of the building to throw the board off. Hearing “noises” or people talking on the ground, she stopped and looked over the edge to be sure no one was standing below. Finding no one there, she threw the board off, unaware that a nail left in the board by her husband had snagged her untucked shirt tail. The weight and momentum of the board she had thrown pulled her off the roof. As a result of her fall, she sustained a severe ankle injury, requiring at least three surgeries.
Claiming her injuries were caused by FST employees distracting her “from time to time” while she was working, Ms. Jag-gers filed suit against FST. The trial court found that FST owed a duty to prevent its employees from going around the building where plaintiff and her husband were working and distracting them and that FST breached this duty to plaintiff. The court then assessed defendant with sixty per cent of the fault in causing plaintiffs injury and awarded damages on this basis.
FST contends here that its workers’ alleged “distractions” was not a cause in fact of plaintiffs accident. FST alternatively contends that it owed no duty to protect the plaintiff from this harm arising in this manner.
DISCUSSION
Whether the defendant is liable for the plaintiffs injury is determined by the application of the duty-risk analysis. Under this analysis, four questions must be considered: (1) Was the defendant’s conduct a cause in fact of the plaintiffs injury? (2) Did the defendant owe a duty to the plaintiff? (3) Was the risk and harm caused within the scope of protection afforded by the duty? (4) Was the duty breached? Mart v. Hill, 505 So.2d 1120 (La.1987); Harvey v. Ouachita Parish School Board, 545 So.2d 1241 (La.App. 2d Cir.1989).
In Hill v. Lundin & Associates, Inc,, 260 La. 542, 256 So.2d 620, 623 (1972) our Supreme Court quoted with approval from a law review article by Wex Malone explaining the rationale behind this analysis as follows:
All rules of conduct, irrespective of whether they are a product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. Malone, Ruminations on Cause-in-Fact, 9 Stanford L.Rev. 60, 73 (1956) (Emphasis own).
See also Gresham v. Davenport, 537 So.2d 1144 (La.1989); Harvey, 545 So.2d at 1244, and cases therein cited.
The first inquiry in making a determination of liability is whether any causal relationship exists between the harm suffered by the plaintiff and the defendant’s alleged negligent conduct. Thus, if the plaintiff shows that she probably would not have suffered injuries complained of but for the defendant’s conduct, she has carried her burden of proof relative to cause-in-fact. See e.g. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin, supra.
An act of a defendant is a cause-in-fact of the harm suffered by a plaintiff if defendant’s conduct was a substantial factor without which the accident would not have occurred. Laird v. Travelers Insurance Company, 267 So.2d 714 (La.1972). In other words, it is a “necessary *810 antecedent.” without which the accident would not have taken place. If the accident would have occurred, regardless of such cause, such cause is not a cause-in-fact. Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Laird v. Travelers Insurance Company, supra.
While we have serious doubts as to the correctness of the trial court’s finding that plaintiff had proven a causal connection, we pretermit review of this factual finding because of our conclusion that defendant did not breach any duty owed plaintiff in this instance.
Whether a defendant owed a legal duty to a particular plaintiff is a question of law. Whether a defendant has breached that duty is a question of fact. Chavez v. Noble Drilling Corporation, 567 F.2d 287 (5th Cir.1978); Annis v. Shapiro, 517 So.2d 1237, 1238 (La.App. 4th Cir.1987).
The duty owed by a landowner to its employees, patrons and guests such as the plaintiff here summarized as follows:
The landowner owes a duty to discover any unreasonably dangerous condition on its premises and to either correct it or warn her of the danger. Shelton v. Aetna Casualty & Surety Company, supra. He must exercise reasonable care for the safety of persons on or around his property. However, a landowner is not liable for any injury sustained which results from a condition which should have been observed by the plaintiff in the exercise of reasonable care or which was obvious to visitor as it was to the landowner. (Emphasis added.)
Annis v. Shapiro, supra.
Applying these rules to the facts here, we find that FST owed no duty to Ms. Jaggers. While FST owed a duty to its employees, patrons and guests to protect their safety by warning them of the danger from material being thrown off the roof, such a duty did not protect Ms. Jaggers from the risk through which her injuries occurred.
As professional roofers, both plaintiff and her husband were aware of the hazards to roofers and others on the ground when material was being thrown off the roof. It was Mr. Jaggers who determined that taking the nails out of the lath boards was “not worth it” since it would have cost FST more money and was unnecessary since the boards would be thrown away. Further, not only was Ms. Jaggers aware that her husband was not pulling the nails, she observed the nail which ultimately snagged her untucked tee shirt, pulled her off the roof and caused her injuries. She knew that particular nail was in the board. Moreover, she was aware of the potential danger the nails presented, but admitted she did not look to see where the nail was before throwing the board on which she was caught.
The evidence further established that Ms. Jaggers and her husband “always” looked below before throwing objects off the roof because it was “the safe thing to do.” According to Mr. Jaggers, looking to see if any FST employees were in the way before she attempted to throw this particular board off the roof was “part of her job.”
The inherent dangers of roofing, as well as that presented by the presence of the nail in the board, was as obvious to the plaintiff, if not more so, than to the defendant’s manager or its employees who had little roofing experience, were unaware of the presence of the nails or the dangers presented and were not even present when the incident occurred. Surely, a reasonable person would anticipate, as the plaintiff did here, that the nail’s presence caused by her employer’s actions presented additional risks that if the nail was caught on her clothing when she threw the board down, the weight and momentum of the board would carry her with it to the ground.
Although plaintiff contends that the previous incidents of FST employees observing and talking to her from the ground distracted her attention from her work, the record clearly reflects that no FST employees were on the premises for at least an hour before the incident occurred. Her subjective conclusions are insufficient to create a duty on FST’s part.
*811 Thus, the duty owed by FST to its employees, patrons and guests, even were we to extend it to the plaintiff here, did not encompass the risk which caused plaintiff’s harm. Such risks are simply too remote and unforeseeable and are not within the scope of the duty FST owed. Accordingly, we find that the trial court was manifestly erroneous as a matter of law in concluding that FST owed Ms. Jaggers a duty to protect her against the specific risk presented by the nail, which caused the serious injuries she sustained, arising from her own inattentiveness.
DISPOSITION
Finding no duty was owed by FST, it is unnecessary to discuss the remaining assignments of error. The judgment of the trial court is therefore reversed and it is ordered that the demands of plaintiff against defendant are dismissed with prejudice at plaintiff’s costs, including costs of this appeal.
REVERSED AND RENDERED.